**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FABIAN T. MORRISON,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:16-1417** |
| **v** | : | **(JUDGE MANNION)** |
| **KAREN E. ROCHLIN, et al.,** | : | |
| **Defendants** | : | |

## MEMORANDUM

## I. Background

Plaintiff, Fabian T. Morrison, an inmate currently housed in the Federal Correctional Complex, Yazoo City, Mississippi, originally filed the above captioned federal civil rights action pursuant to 28 U.S.C. §1331, in the United States District Court for the Eastern District of Pennsylvania. (Doc. 5). The named Defendants are located at either the Coleman Federal Correctional Complex ("FCC-Coleman"), Coleman, Florida, the United States Penitentiary Lewisburg ("USP-Lewisburg"), Pennsylvania or in Washington D.C. and/or the Central Office. Id.

By Order dated February 1, 2016, pursuant to 28 U.S.C. §1404(a)[1], the United States District Court for the Eastern District transferred the above

---

[1]Under 28 U.S.C. §1404(a), district courts may transfer a civil action to any district where the action might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."

captioned action to the Middle District (Doc. 27, Order), where it was received on July 18, 2016.[2] (Doc. 41).

Plaintiff names the following individuals as Defendants in the above captioned action:

### **Defendants Related to FCI-Coleman**

| | |
|---|---|
| Karen E. Rochlin: | Criminal Assistant United States Attorney in Miami, Florida |
| Tamyra Jarvis: | FCC-Coleman Complex Warden |
| Jorge Pastrana: | Former Coleman Warden, Retired |
| John Flournoy: | FCI-Jesup Warden, Formerly Associate Warden at FCC-Coleman |
| Ganson McManus: | FCI-Herlong Associate Warden, Formerly at FCC-Coleman |
| Thomas Matthews: | FCI-Coleman- Medium Lieutenant |
| Nathaniel Bullock: | USP-Yazoo City Unit Manager, Formerly at FCC-Coleman |
| Erik Rickard: | USP-Florence ADMAX Complex Captain, Formerly Lieutenant at FCC-Coleman |
| Margaret Reherman: | FCI-Aliceville, Associate Warden, Formerly Unit Manager FCC-Coleman |
| Margaret Harris: | Former Case Manager at FCI-Coleman- Medium, Retired |
| Ebelia Carrero: | DHO at FCC-Coleman |

### **Defendants Related to USP-Lewisburg**

| | |
|---|---|
| Jeff Thomas: | Former USP-Lewisburg Warden, Retired |

---

[2]The Court notes that Plaintiff filed an appeal of the Eastern District Court's transfer Order, which was dismissed for lack of jurisdiction by the United States Court of Appeals for the Third Circuit on June 20, 2016. (See Docs. 35, 38, 39, 40).

| Jeffrey Benfer: | USP-Lewisburg Lieutenant |
| Dave Knox: | Unit Manager, Retired |
| Charles Berkoski: | Case Manager |
| Matthew Edinger: | Correctional Counselor |
| Robert Marr: | Correctional Counselor |
| Robert Aderhold: | Correctional Counselor |
| J.L. Norwood: | Retired, Former NERO Regional Director |
| Angelo Jordan: | USP-Lewisburg DHO |

### Defendants Related to Washington D.C. and/or the Central Office

| Glen A. Fine: | Acting Inspector General of the Department of Defense, previously served as IG of the USDOJ until January 2011 |
| Thomas McLaughlin: | Formerly in Office of the Inspector General |
| Mary Practice Brown: | Office of Professional Responsibility |
| Charles Samuels: | Former BOP Director-Retired |
| Harell Watts: | Retired Central Office Administrator of National Inmate Appeals. |

(Doc. 48-2, at 3, Declaration of Jonathan Kerr, Senior Consolidated Legal

Center Attorney for USP-Lewisburg).

Plaintiff raises the following six claims within his complaint:

(1) On June 17, 2011, Plaintiff requested the Miami Dade Sheriff serve AUSA Karen E. Rochlin with a Petition seeking to amend inaccurate information allegedly located in his Central File and on July 6, 2011, is subsequently placed in the Special Housing Unit at FCI-Coleman-Medium.

(2) On July 12, 2011, at FCI-Coleman-Medium a Special Investigative Services technician planted a weapon within his lotion bottle and he was issued an incident report and sanctioned despite exculpatory fingerprint evidence. Harell Watts upholds sanction on appeal and refuses to turn over latent finger prints.

(3)   Plaintiff composes letters to "offices of primary interest, appealing" the FCI Colman-Medium incident report to BOP Director Charles Samuels, Southeast Regional Director, Harell Watts, Inspector General Glen Fine, Assistant Inspector General Thomas F. McLaughlin, and Mary Practice Brown, Office of Professional Responsibility.

(4)  On November 29, 2011, Plaintiff has an SMU hearing and is recommended for SMU placement by the Southeast Regional Director, with the final decision illegally designating him to a SMU made by the DSCC Chief.

(5)  On January 29, 2013, at USP-Lewisburg, Plaintiff was issued a Code 203 Incident Report for Disruption, Most like Extortion based on fabricated evidence and sanctioned.

(6)  While at USP-Lewisburg, Plaintiff was allegedly exposed to toxic chemicals causing resultant eye irritation, exacerbation of glaucoma, choking and sneezing.

(Doc. 5, at 3-8).

By Memorandum and Order dated March 29, 2017, Defendants' motion to sever and transfer Claim Nos. one through four (Doc. 47) was granted. (Docs. 66, 67). Plaintiff's claims, one through four, were transferred to the United States District Court for the Middle District of Florida and Plaintiff's motion to transfer the above captioned action back to the United States District Court for the Eastern District of Pennsylvania (Doc. 45) was denied. Id. Plaintiff's claims, numbered five and six proceed before this court.

Presently before the Court is a motion to dismiss and/or for summary

judgment, filed on behalf of Defendants R. Aderhold, J. Benfer, C. Berkoski, M. Edinger, A. Jordan, D. Knox, R. Marr, J.L. Norwood, and J.E. Thomas, the Defendants named in Plaintiff's claims, numbered five and six. (Doc. 49). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendant's motion to dismiss and for summary judgment will be granted.

## II.    Standards of Review

### A. Bivens Standard

Plaintiff's claims are filed pursuant to 28 U.S.C. §1331, in accordance with Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, (1971). Under Bivens, the District Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor. Bivens, supra. Pursuant to Bivens, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978). A Bivens-style civil rights claim is the federal equivalent

of an action brought pursuant to 42 U.S.C. §1983 and the same legal principles have been held to apply. See, Paton v. LaPrade, 524 F.2d 862, 871 (3d Cir. 1975); Veteto v. Miller, 829 F.Supp. 1486, 1492 (M.D.Pa. 1992); Young v. Keohane, 809 F.Supp. 1185, 1200 n. 16 (M.D.Pa. 1992). In order to state an actionable Bivens claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. See West v. Atkins, 487 U.S. 42, 48 (1988); Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D.Pa. 1992).

## B. **Motion to Dismiss**

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings. Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed.R.Civ.P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendant's motion. Thus, the motion will be treated as solely seeking summary judgment. See Latham v. United States, 306 Fed. Appx. 716, 718

(3d Cir. 2009) (when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

### C. **Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(a) "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. Anderson, 477 U.S. at 248; Gray v. York Newspapers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 257; Brenner v. Local 514, United Brotherhood of

Carpenters and Joiners of America, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. Moore v. Tartler, 986 F.2d 682 (3d Cir. 1993); Clement v. Consolidated Rail Corporation, 963 F.2d 599, 600 (3d Cir. 1992); White v. Westinghouse Electric Company, 862 F.2d 56, 59 (3d Cir. 1988). In order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed.R.Civ.P. 56(c)(1); see Celotex, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U .S.

at 323; see Harter v. G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, although a court may also give parties an opportunity to properly provide support or opposition. Fed.R.Civ.P. 56(e).

## III.  **Statement of Facts**[3]

On January 29, 2013, Morrison was issued Incident Report No. 2403114 for Conduct which Disrupts, most like Extortion, a code 204[4] violation, after a review of his property at USP-Lewisburg revealed numerous

---

[3]Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall included a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 52) will be deemed admitted.

[4]This code section was amended by the Discipline Hearing Officer to correct a typographical error and reflect the correct code to be 204, Extortion (Attempt), not code 203. (See Doc. 52-1 at 69, Discipline Hearing Officer Report).

Sovereign Citizen[5] styled documents. (Doc. 52-1 at 54).

Specifically, Incident Report No. 2403114, which was delivered to Morrison on January 29, 2013 at 4:45 p.m., states the following:

> On January 29, 2013, I inspected the confiscated property of inmate Morrison, Fabian #02835-265. Within his property were numerous items generated by the inmate in an attempt to obtain $35,000,000.00 from a Karen Rochlin, Assistant United States Attorney, Miami, FL. The documents titled "INVOICE, Verified Statement of Account, Non-Negotiable-Private Between the parties" is a bogus, legal appearing document in which Morrison claims he is a "creditor" owed money based on his allegation of inaccurate information in his central file. The "debtor" is the AUSA for not correcting the alleged error. Morrison states on the form "Debtor is allowed 3 days to raise any objections to this account statement. The amount is due and owing. Payment in full is herewith demanded, and in no objection raised by debtor is a contract agreement of the debt owed. Remit to Fabian Morrison." The erroneous document is signed by the inmate Morrison and unidentified individuals. Morrison is attempting to create a business type relationship for criminal/administrative matter, a "Sovereign Citizen" type act, with absolutely no legal bearing of relevance to criminal law or administrative action. In addition, Morrison generated paperwork to have the AUSA served by the US Marshals and Miami-Dade County Sheriff's office with the "Invoice." In a statement hand written by Morrison, page three (3)

---

[5]The Sovereign Citizen movement is a loosely organized collection of groups and individuals who have adopted an anarchist ideology. Adherents believe that virtually all existing government in the United States is illegitimate and they don't have to answer to any government authority, including courts, taxing entities, or law enforcement. Members of sovereign citizen groups use a variety of harassment and intimidation tactics against the government and other authority, to include filing false liens against public officials. See https://www.fbi.gov.

he states he attempt to have the "invoice" served to the AUSA. Clearly, Morrison is attempting to intimidate and extort money or services from AUSA via bogus, legal appearing paperwork under the threat of a significant financial encumbrance. These items were confiscated.

(Doc. 52-1 at 54, Doc. 52-1 at 60).

On February 1, 2013, Morrison appeared before the Unit Discipline Committee ("UDC"). (See Doc. 52-1 at 54). Due to the severity of the offense, the UDC referred the charge to the Disciplinary Hearing Officer ("DHO") for further hearing and further advised that if found guilty, to apply the "maximum sanctions" to Morrison to "deter future misconduct of this nature." Id. During the UDC hearing, staff member, M Nicholas, informed Morrison of his rights at the DHO hearing and provided him with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. at 58).

Also on February 1, 2013, Morrison was provided with a "Notice of Discipline Hearing before the (DHO)" form. (Id. at 57). Morrison requested the Warden appoint a staff representative, and he chose not to call any witnesses. Id.

On March 14, 2013, Morrison appeared for a hearing before Defendant, Angelo Jordan, DHO. (Doc. 52-1 at 72). During the DHO hearing, Plaintiff was again read his rights, and he indicated that he understood them. Id. The DHO confirmed that Morrison received a copy of the incident report. Id.

During the DHO hearing, Morrison argued that the DHO had no authority and submitted a lengthy statement discussing the authenticity of the documents and claiming that he was allowed to pursue the $35 million dollar sum for Privacy Act violations. (See Doc. 52-1 at 66-67). Morrison requested "someone from the office of IA (Internal Affaires) or someone from the FBI to be a witness". Id. Upon further inquiry from the DHO to Morrison regarding the necessity of the presence of a member from the "IA" or the "FBI", the DHO determined that it was not necessary to request the presence of a member from the "IA" or the "FBI". Id.

After considering the incident report and investigation for report no. 2403114, documentary evidence produced by Morrison, other fraudulent forms confiscated from Morrison, and disposition of contraband forms, the DHO determined that Morrison committed the prohibited act of Extortion (Attempt), a 204A code violation). Morrison was advised of his appeal rights at the conclusion of the hearing. Id.

Morrison appealed the DHO decision to the Northeast Regional Office. (Doc. 52-1 at 69). On appeal, the Northeast Regional Office determined that there was no evidence the fraudulent forms were ever placed in the mail or received by the intended recipient. Id. At the resolution of the appeal, the DHO concluded that the charge of code 305, possession of

anything not authorized, is more appropriate, as the charge is supported in section 11 of incident report no. 2403114. Id.

On June 26, 2013, the DHO determined that Morrison committed the prohibited act of violation to code 305, possession of anything not authorized. Id. The DHO sanctioned Morrison to disallowance of fourteen (14) days good conduct time; thirty (30) days disciplinary segregation; one year loss of commissary, telephone, visiting and property privileges. (Doc. 52-1 at 72). Morrison was advised of his appeal rights at the conclusion of the hearing. Id.

On July 11, 2013, Morrison appealed Incident Report No. 2403114 to the Regional Office at Remedy No. 742356-1. (Doc. 52-1 at 36). August 9, 2013, the Remedy No. 742356-R1 was denied. Id.

On September 13, 2013, Morrison appealed the Regional Office's denial to the Central Office at Remedy No. 742356-A2 (formerly Remedy No. 742356-R1) with the Central Office. (Doc. 52-1 at 37). On September 18, 2013, Remedy No. 742356-A2 was rejected for not submitting more than one continuation page and an improper number of copies of the permitted continuation page. Id. Morrison was instructed to condense the information into a continuation page and resubmit the appeal in proper form within fifteen (15) days. Id. Additionally, on September 13, 2013, Morrison submitted an additional, separate appeal (Remedy No. 742356-A1) to the Central Office.

Id. On September 18, 2013, Remedy No. 742356-A1 was voided in accordance with the rejection of Remedy No. 742356-A2. Id.

On September 30, 2013, Morrison resubmitted his appeal to the Central Office for final review, at Remedy No. 742356-A3, where it was denied on April 8, 2014. Id. The charges and sanctions imposed in connection with Incident Report No. 2403114 remain valid on Morrison's disciplinary record. (See Doc. 52-1 at 74-76).

A review of Morrison's administrative remedies from June 1, 2011 through August 3, 2016, reveal that, although Morrison has filed sixty-one (61) administrative remedies on various issues, there is no record to indicate that Morrison ever exhausted, or attempted to exhaust, any administrative remedies regarding his toxic exposure claim. (See Doc. 52-1 at 15-46).

## IV.    Discussion

### A.  Exhaustion

Defendants contend that Morrison's complaint regarding exposure to toxic chemicals should be dismissed for his failure to exhaust available administrative. In pertinent part, the Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. See 42 U.S.C. §1997e(a); Woodford v. Ngo, 548 U.S. 81 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis v. Reno, 204 F.3d 65, 71 (3d Cir. 2000). The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford, 548 at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004).

A prisoner does not have to allege in his complaint that he has

exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Failure to exhaust available administrative remedies is an affirmative defense. Id. As such, it must be pleaded and proven by the Defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). Defendants have properly raised the matter of exhaustion of administrative remedies made available to inmates confined within the Bureau of Prisons ("BOP").

"The Bureau of Prisons has established an Administrative Remedy Procedure through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter. This procedure applies to all inmates confined in Bureau of Prisons institutions. . . ." 28 C.F.R. §542.10. Inmates are to informally present their complaints to the staff and the staff is to attempt to resolve the matter. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate is then to execute the appropriate form to bring the matter to the attention of the warden. 28 C.F.R. §542.14(b). The warden is then to respond to the inmate's complaint within twenty (20) days. Id. at §542.18. If an inmate is dissatisfied with the warden's response, he may then appeal to the Regional Director. Id. at §542.15. If the response of the Regional Director is not satisfactory, the inmate may then appeal to the Central Office of the Federal Bureau of Prisons, which office is the final

administrative appeal in the Bureau of Prisons. Id.

Plaintiff's complaint challenges Incident Report No. 2403114 as "fabricated" and "fraudulent" and that Defendants "retaliated against Plaintiff for bringing attention to the criminal activities of law enforcement" by "tak[ing] [him] from one block to another where toxic chemicals were constantly sprayed by staff, which caused the Plaintiff to choke, sneeze and caused severe eye irritation...causing Plaintiff to lose more of his eye site to his eye disease 'Glaucoma'" and "caus[ing] a reduction in the Plaintiff's life expectancy." (Doc. 1-4 at 6-8).

The record before this Court reveals that Plaintiff properly exhausted his administrative remedies with respect to his DHO challenges to Incident Report No. 2403114. However, despite having filed sixty-one (61) administrative remedies on various issues, between June 1, 2011 and August 3, 2016, Morrison has not filed any remedy pertaining to toxic exposure. In fact, there is no record to indicate that Morrison ever exhausted, or attempted to exhaust, any administrative remedies regarding claims of toxic exposure. Thus, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir.

2004). Morrison's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

In Spruill, supra, our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further ruled that procedural default under §1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in §1997e(a)." Id. at 231, 232.

In this case, the record clearly discloses that Morrison failed to exhaust his administrative remedies with respect to his toxic exposure claim. Thus, Morrison has sustained a procedural default with respect to this claim.

Spruill cited with approval the Seventh Circuit decision in Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). Spruill, 372 F.3d at 231. In Pozo, the Seventh Circuit ruled that "to exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo, 286 F.3d at 1025 (emphasis added). Morrison offers no evidence to justify his failure comply with BOP requirements. Consequently, he is now foreclosed from litigating his remaining claims in this Court.

18

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance. In Berry v. Kerik, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances. In Ross v. County of Bernalillo, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in Pozo, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted." These precedents support this Court's decision to enter judgment in favor of Defendants.

## B. **Claims Based on Disciplinary Proceedings**

The sanctions levied against Morrison during his disciplinary hearing, were all imposed as a result of prison misconduct. The Court finds that any Fifth Amendment due process claim regarding his disciplinary rehearing is barred under Heck v. Humphrey, 512 U.S. 477 (1994) and Edwards v. Balisok, 520 U.S. 641 (1997).[6] Under some circumstances, a prisoner may bring a Bivens claim for monetary damages based on the denial of due process during a prison disciplinary hearing. See Wolff v. McDonnell, 418 U.S. 539, 554 (1974) (stating that plaintiff's §1983 "damages claim was ... properly before the District Court and required determination of the validity of the procedures employed for imposing sanctions, including loss of good time, for flagrant or serious misconduct"). However, such due process claims cannot be brought in a Bivens action where the claims "necessarily imply the invalidity of the punishment imposed" unless the plaintiff shows that the sanctions have been overturned. See Balisok[7], 520 U.S. at 648 (finding claims

_____

[6]While Heck, and Balisok all involved §1983 cases, courts have extended their holdings to Bivens actions. See Lora-Pena v. F.B.I., 529 F.3d 503, 506 n. 2 (3d Cir. 2008) ("Although Heck involved a §1983 action by a state prisoner, the reasoning in Heck has been applied to bar Bivens claims" (citing Williams v. Hill, 74 F.3d 1339, 1341 (D.C. Cir.1996) (per curiam)).

[7]In Edwards v. Balisok, the Supreme Court applied the lessons of Heck to a state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily
(continued...)

for declaratory and monetary relief based on allegations that plaintiff was denied opportunity to present a defense and that hearing officer was biased could not be brought pursuant to §1983); Heck, 512 U .S. at 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254."). As the record before us demonstrates, the charges and sanctions stemming from Incident Report No. 2403114 remain valid on Plaintiff's disciplinary record.

### C.  **Personal Involvement**

To state a claim under Bivens, Plaintiff must allege that he was deprived of a federal right by a person who was acting under color of federal law. See

---

[7](...continued)
challenging the result and not seeking the restoration of the good-time credits. Again, the Court emphasized that such a claim is not cognizable under §1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment. 520 U.S. at 646-8.

Young v. Keohane, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); West v. Atkins, 487 U.S. 42, 48, (1988).

It is well established that personal liability in a civil rights action cannot be imposed upon a state official based on a theory of *respondeat superior*. See, e.g., Rizzo v. Goode, 423 U.S. 362 (1976). It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. Sutton v. Rasheed, 323 F.3d 236, 249–250 (3d Cir.2003). Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. Id. As the Court stated in Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

There is no evidence of record that Defendants Knox, Thomas, Berkoski, Edinger, Marr, Aderhold, and Norwood were involved in the issuance of Incident Report No. 2403114, or the disciplinary hearings that followed. Consequently, these Defendants had no personal involvement in

addressing Plaintiff's incident report. See Sutton, 323 F.3d at 249 (finding that personal involvement or some affirmative action on the part of a defendant is necessary before he or she may be found liable for a civil rights violation).

Moreover, aside from naming Warden Thomas in the caption of the complaint, there are no allegations in the body of the complaint against this Defendant. There is no evidence of record that this Defendant was personally involved in any of the alleged incidents of constitutional deprivation. Thus, it is apparent that Plaintiff is attempting to impose liability on the basis of *respondeat superior*.

Lastly, Plaintiff's allegations that Defendants Knox, Berkoski, Edinger, Marr, Aderhold, and Norwood violated his constitutional rights by ostensibly being aware of the proceeding or simply being a member of his unit team, fare no better. Allegations that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. See Rode, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); Brooks v. Beard, 167 Fed.Appx. 923, 925 (3d Cir. 2006) ((holding that a state prisoner's allegation that prison officials and

administrators responded inappropriately, or failed to respond to a prison grievance, did not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct).

## V.    Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment with respect to Plaintiff's claim of exposure to toxic chemicals and his challenge to his misconduct rehearing. An appropriate order shall issue.

*s/Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: September 29, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-1417-02.wpd