# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FABIAN T. MORRISON, | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:16-1417 |
| v | : | |
| | | (JUDGE MANNION) |
| KAREN E. ROCHLIN, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

Plaintiff, Fabian T. Morrison, an inmate currently housed in the Federal Correctional Complex, Yazoo City, Mississippi, originally filed the above captioned federal civil rights action pursuant to 28 U.S.C. §1331, in the United States District Court for the Eastern District of Pennsylvania. (Doc. 5).

By Order dated February 1, 2016, pursuant to 28 U.S.C. §1404[1], the United States District Court for the Eastern District of Pennsylvania transferred the above captioned action to the Middle District of Pennsylvania (Doc. 27, Order), where it was received on July 18, 2016. (Doc. 41).

---

[1] Under 28 U.S.C. §1404(a), district courts may transfer a civil action to any district where the action might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."

1

By Memorandum and Order dated March 29, 2017, Defendants' motion to sever and transfer was granted in part and only Plaintiff's claims, five and six were permitted to proceed before this court. (Docs. 66, 67).

By Memorandum and Order dated September 29, 2017, the Court granted Defendants' motion to dismiss and/or for summary judgment, finding that Plaintiff failed to exhaust his claim of exposure to toxic chemicals and his challenge to his misconduct rehearing was without merit. (Docs. 77, 78).

Plaintiff filed a timely appeal, and by Opinion filed June 24, 2019, the United States Court of Appeals for the Third Circuit, affirmed in part, vacated in part, and remanded the case for further proceedings. (Doc. 97). Specifically, the Court of Appeals remanded with respect to whether Morrison had properly exhausted his administrative remedies and whether he was illegally detained in the SMU.

By Order dated June 27, 2019, this Court's March 29, 2017 Memorandum and Order was vacated, in part, the Clerk of Court was directed to reopen the action, the parties were permitted to engage in discovery, and any dispositive motions were to be filed on, or before, August 26, 2019. (Doc. 89).

On August 26, 2019, Defendants filed a motion to dismiss, and for summary judgment, arguing, *inter alia*, that Plaintiff failed to exhaust his

2

administrative remedies with respect to any claim related to toxic exposure or detention in the SMU at USP-Lewisburg. (Doc. 93).

By Order dated October 3, 2019, the Court, provided notice to the parties that Defendants' motion to dismiss and for summary judgment (Doc. 90) would be treated solely as a motion for summary judgment, and the Court placed the parties on notice that it may consider exhaustion in its role as fact finder under Small v. Camden County, 728 F.3d 265 (3d Cir. 2013) (citing Paladino v. Newsome, 885 F.3d 203 (3d Cir. 2018)). (Doc. 94). The Order also afforded the parties the opportunity to supplement the record with any additional supporting evidence relevant to exhaustion of administrative remedies. *Id.*

On October 23, 2019, Defendants informed the Court that they would not be supplementing their motion for summary judgment, and that they would rely on documents previously submitted in support of their motion for summary judgment. (Doc. 95).

Although provided an opportunity to engage in discovery and to submit an opposition brief addressing the issue of exhaustion of administrative remedies, Plaintiff has failed to oppose Defendants' motion for summary judgment. On October 28, 2019, Plaintiff filed a document entitled "Over the

Penalty of Perjury," in which he challenges the validity of this Court's October 3, 2019 Order, by stating the following:

> There is no seal of the United States District Office stating a true copy, or a true bill in commerce with a sworn affidavit by someone from this office that this is a "true", "correct" and "certain situation" which in commerce is, essential, the "Truth, the Whole Truth and Nothing but the Truth" when Judge Mannion send his Order, October 3, 2019.

(Doc. 96). This, of course, is not an appropriate responsive filing. Thus, pursuant to the MDPA Local Rules, Plaintiff is deemed not to oppose Defendants' motion for summary judgment.

## II. Standards of Review

### A. Summary Judgment

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "As to materiality, ... [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply based on the pleadings, or on conclusory statements that a factual issue exists. Anderson, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(C)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(C)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Id. (internal quotations, citations, and alterations omitted).

### III. Statement of Facts[2]

The Bureau of Prisons (BOP) has an administrative remedy procedure

---

[2] Middle District of Pennsylvania Local Rules of Court provide that in addition to filing a brief in response to the moving party's brief in support, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] ..., as to which it is contended that there exists a genuine issue to be tried." See M.D. Pa. LR 56. 1. The rule further states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served

6

with respect to inmate complaints, namely 28 C.F.R. §542.10, *et seq*.

The BOP's Administrative Remedy Program allows an inmate to seek formal review of an issue relating to any aspect of his confinement. 28 C.F.R. §542.10(a). Before seeking formal review, an inmate must first attempt to resolve the matter informally by presenting his complaint to staff on an Informal Resolution Attempt form commonly referred to as a BP-8. 28 C.F.R. §542.13(a). If informal resolution is unsuccessful, the inmate may then seek relief from the warden with the submission of a Request for Administrative Remedy, commonly referred to as a BP-9. 28 C.F.R. §542.14. The deadline for completion of the BP-8 and submission of the BP9 is twenty days from the date of the event which is the subject of the remedy. Id.

If the inmate is not satisfied with the warden's response, he has twenty days from the date of the response, to file a BP-10, Regional Administrative Remedy Appeal, with the Regional Director. 28 C.F.R. §542.15(a). If the response of the Regional Director is not satisfactory, the inmate may then file, within thirty days of the response, a Central Office Administrative

---

by the opposing party. See id. Because Plaintiff has failed to file a separate statement of material facts controverting the statement filed by Defendant, all material facts set forth in Defendant's statement (Doc. 92) will be deemed admitted.

Remedy Appeal or BP-11 with the BOP's General Counsel. Id. An inmate's appeal to the Central Office is the final administrative level of appeal in the BOP. 28 C.F.R. §542.14(b).

A review of Morrison's administrative remedies from June 1, 2011 through August 3, 2016, reveal that Morrison filed sixty-one (61) administrative remedies on various issues. (*See* Doc. 92-1 at 14-44). However, there is no record to indicate that Morrison ever exhausted, or attempted to exhaust, any administrative remedies regarding his toxic exposure claim or his detention in the SMU at USP-Lewisburg. Id.

## IV. Discussion

### A. Exhaustion

Defendants seek summary judgment of Morrison's complaint regarding exposure to toxic chemicals, based on his failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1996 (the "PLRA"). The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." Ross v. Blake,–– U.S. ––, 136 S. Ct. 1850, 1856, 195 L.Ed.2d 117 (2016); see Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with

the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."). The text "suggests no limits on an inmate's obligation to exhaust-irrespective of 'special circumstances.'" Id. "And that mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account. See Miller v. French, 530 U.S. 327, 337 (2000).(explaining that "[t]he mandatory 'shall' ... normally creates an obligation impervious to judicial discretion")." Id. at 1856-57. "Of course, exhaustion applies only when administrative remedies are 'available.' Under certain circumstances, a nominally extant prison grievance policy is not truly an 'available' remedy. Ross v. Blake, ––– U.S. –––, 136 S. Ct. 1850, 195 L.Ed.2d 117 (2016). This applies when the procedure 'operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," where it is "so opaque that it becomes, practically speaking, incapable of use,' or 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.' Id. at 1859-60." Shifflett v. Korszniak, 934 F.3d 356, 365 (3d Cir. 2019)

The PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. Woodford v. Ngo, 548

9

U.S. 81, 92 (2006); Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); Rivera v. Pa. Dep't of Corr, 388 F.App'x 107, 108 (3d Cir. 2010) (stating "[a]n inmate must exhaust his administrative remedies prior to filing a civil action in federal court."). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See Spruill, 372 F.3d 218. Notably, prison administration must also comply with the demands of the system. "[A]s soon as a prison fails to respond to a properly submitted grievance or appeal within the time limits prescribed by its own policies, it has made its administrative remedies unavailable and the prisoner has fully discharged the PLRA's exhaustion requirement." Shifflett, 934 F.3d at 365.

Plaintiff's complaint challenges Incident Report No. 2403114 as "fabricated" and "fraudulent" and that Defendants "retaliated against Plaintiff for bringing attention to the criminal activities of law enforcement" by "tak[ing] [him] from one block to another where toxic chemicals were constantly sprayed by staff, which caused the Plaintiff to choke, sneeze and caused severe eye irritation...causing Plaintiff to lose more of his eye site to his eye disease 'Glaucoma'" and "caus[ing] a reduction in the Plaintiff's life expectancy." (Doc. 1-4 at 6-8).

The record before this Court reveals that Plaintiff properly exhausted his administrative remedies with respect to his DHO challenges to Incident Report No. 2403114. However, despite having filed sixty-one (61) administrative remedies on various issues, between June 1, 2011 and August 3, 2016, Morrison has not filed any remedy pertaining to toxic exposure. In fact, there is no record to indicate that Morrison ever exhausted, or attempted to exhaust, any administrative remedies regarding claims of toxic exposure, or that he was illegally housed in the SMU.

To the extent that the Court of Appeals remanded for further proceedings with respect to Plaintiff's allegation that staff refused to provide him with grievance forms, Plaintiff was provided an opportunity to conduct discovery on this claim (see Doc. 89), and failed to conduct any such discovery. In fact, Plaintiff did not even file a brief in opposition to Defendants' motion to dismiss and for summary judgment.[3] To the extent that the Court

---

[3] The Court reiterates that the only communication Morrison has had with this Court since the reopening of his action on June 27, 2019, is a document entitled "Over the Penalty of Perjury", in which Plaintiff returns a copy of this Court's October 3, 2019 Order treating Defendants' motion to dismiss and for summary judgment, solely as a motion for summary judgment. (Doc. 96). Plaintiff challenges the Order as having "no seal of the United States District Office" or "stating a true copy' containing a "sworn affidavit by someone from this office that it is a 'true,' 'correct' and 'certain situation,' which in commerce is essential to the truth, the whole truth and nothing but the truth." Id.

11

of Appeals references documents that Plaintiff claims are attached to his complaint, specifically, Doc. 1-7 at 40, in which Plaintiff claims he complained of this issue, the administrative remedy referenced by Plaintiff in Doc. 1-7 at 40, Remedy ID 719557-R1, addresses the confiscation or destruction of personal property from his cell. (See Doc. 1-7 at 26, Administrative Remedy). It makes no mention of Plaintiff being refused grievance forms or access to the grievance procedure. Thus, aside from Plaintiff's conclusory allegation, the record is devoid of any specific instances of Plaintiff being unable to access the administrative remedy process. As noted previously, Morrison is required to advance more than a mere scintilla of evidence in his favor. Anderson, 477 U.S. at 248. His claim simply cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Id.

Thus, it is evident that Plaintiff failed to follow the procedural requirements of the BOP. Failure to employ the system of administrative remedies, even if the administrative process would be inadequate to grant full relief, procedurally defaults any federal claim. See Spruill v. Gillis, 372 F.3d 218, 222-26 (3d Cir. 2004). Morrison's failure to pursue the appropriate administrative process with respect to his claims precludes the litigation of such claims.

**B.  Confinement in SMU**

It appears that Morrison alleges a violation of the Due Process Clause of the Fourteenth Amendment against Defendants, stemming from his placement in the Special Management Unit ("SMU") while incarcerated at USP-Lewisburg.

In order to determine whether a due process violation has occurred, an initial determination must be made as to whether Morrison was deprived of a liberty interest. If no liberty interest is found to exist, it is unnecessary to define what process was mandated to protect it. See Meekins v. Beard, No. CIV. 3:CV-06-290, 2008 WL 647738, at *4 (M.D. Pa. Mar. 5, 2008). As explained by the Third Circuit, "a protected liberty interest can arise either from the Due Process Clause or from state law." Mackey v. Smith, 249 F. App'x 953, 954 (3d Cir. 2007) (citing Asquith v. Dep't of Corr., 186 F.3d 407, 409 (3d Cir. 1999)). The Due Process Clause protects an inmate's right to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995)). Thus, a liberty interest is created only where "the conditions or degree of confinement to which the inmate is

subjected are beyond the sentence imposed upon him or otherwise violate the Constitution." Mitchell v. Dodrill, 696 F. Supp. 2d 454, 470 (M.D. Pa. 2010) (citing Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002)).

"The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976)). Indeed, "the mere fact of placement in administrative segregation is not in itself enough to implicate a liberty interest; the liberty interest only exists if that placement is an 'atypical and significant hardship' relative to others similarly situated." Leamer v. Fauver, 288 F.3d 532, 546 (3d Cir. 2002). "Because disciplinary detention and 'administrative segregation [a]re the sort[s] of confinement that inmates should reasonably anticipate receiving at some point in their incarceration,' [an inmate's] transfer to 'less amenable and more restrict quarters' do not implicate a liberty interest protected by the Due Process Clause." Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002) (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).

Here, the allegations, taken as true, do not lead to a plausible inference that Morrison's placement in the SMU imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; Johnson v. Burris, 339 F. App'x 129, 131 (3d Cir.

2009);Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997). The record contains no facts supporting the conclusion that Morrison was subjected to confinement that exceeded the sentence imposed upon him or otherwise violated the Constitution. Morrison merely challenges his Disciplinary Hearing and the DHO's recommendation to designate him to the SMU. Such a claim pertaining to the quality of the hearing he received soon after his assignment to the SMU does not constitute a dramatic departure from the accepted standards for conditions of confinement, which would implicate a liberty interest. This conclusion is consistent with prior holdings of this Court that placement in the SMU does not implicate due process of law. See Smith v. Dodrill, et al., Civ. No. 4:07–cv–2295, 2009 WL 62175, at *4, *11–*12 (M.D. Pa. Jan. 8, 2009); Spencer v. Kelchner, et al., Civ. No. 3:06–cv–1099, 2007 WL 88084, at *10 (M.D. Pa. Jan. 9, 2007); Francis v. Dodrill, et al., Civ. No. 3:04–cv–1694, 2005 WL 2216582, at *3–*5 (M.D. Pa. Sept. 12, 2005). Thus, while Morrison clearly would prefer not to be housed in the SMU, his preference is not a liberty interest protected by the Due Process Clause. McKettrick v. Williamson, No. Civ. A. 4:CV-06-0543, 2006 WL 1307929, at *6 (M.D. Pa. Mar. 22, 2006) *report and recommendation adopted in part*, No. Civ. 4:06-CV-543, 2006 WL 1307919 (M.D. Pa. May 10, 2006) (citation omitted).

To the extent Morrison argues that the existence of the SMU somehow violates the Eighth Amendment, such a claim is meritless, as restrictive conditions in administrative custody, in and of themselves, do not violate the Eighth Amendment. See Quijada v. Bledsoe, No. 1:CV-08-2022, 2011 WL 1303224, at *9 (M.D. Pa. Mar. 31, 2011).

Morrison's SMU claim fails as a matter of law. Defendants are entitled to judgment on this claim.

## V. Conclusion

Based upon the undisputed facts of record, Defendants are entitled to summary judgment with respect to Plaintiff's failure to exhaust his claim of exposure to toxic chemicals and his challenge to confinement in the SMU. An appropriate order shall issue.

*S/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: March 31, 2020**
16-1417-03.

16